CHARLES M. STEAD *et ux. vs.* FRANK S. MANTON *et al.*

Testamentary gifts :

*First*, to my son J. " to have, to hold and use during his natural life all of my personal estate, moneys deposited at the Providence Institution for Savings, notes in my possession, household furniture or other personal property at my decease I then hold."

*Second*, to my son J. " all my real estate, including the cottage . . . . and any other property I may hold at my decease." .

*Fourth*. " It is also my will and desire that the said J. be my sole executor, having all my property appraised and holding the same in trust for my beloved grand children and great grand children, and to be divided amongst them at his death according to the law of inheritance."

*Held*, that J. took under the second clause an absolute fee simple in the realty and that the fourth clause applied only to the principal of the personalty of which the income had been given to J. for life, and which had not been previously disposed of by the will.

BILL IN EQUITY for partition. On motion for a final decree.

*January* 21, 1893. PER CURIAM. The only question remaining in this case is, to whom shall be paid the residue, to wit, one fifth of the proceeds of the real estate mentioned in the bill. This depends on the construction of the first, second and fourth clauses of the will of Abby T. Potter, deceased. These clauses are as follows :

"*First*. In consideration of an amount of money received from my son John D. Potter thirty years ago and used by me in the improvement of my house which did materially reduce that portion he might receive at my decease therefore I give and bequeath to said son John D. Potter, to have, to hold and use during his natural life all of my personal estate moneys deposited at the Providence Institution for Savings

notes in my possession.household furniture or other personal property at my decease I then hold.

"*Second*  I give and devise to my son John D. Potter all my real estate including the cottage situated and designated as number Two hundred and fifty four Public street in city of Providence also my share of two houses and lots originally bequeathed to the Dyer heirs by Dr. Hercules Whitney and any other property I may hold at my decease.

"*Fourth*  It is also my will and desire that the said John D. Potter be my sole executor having all my property appraised and holding the same in trust for my beloved grand children and great grand children and to be divided amongst them at his death according to the law of inheritance."

John D. Potter contends that under the second clause he took an absolute estate in fee in the real estate which the fund represents and therefore that he is entitled to the fund. The beneficiaries under the fourth clause, on the other hand, contend that the second and fourth clauses are to be taken together, and that the effect of the fourth clause is to cut down the devise in the second clause to a life estate and hence John D. Potter is entitled to the income only of the fund during his life.

The intention of the testatrix in the provisions of her will quoted is not so clearly indicated as could be desired. On consideration we have reached the conclusion that her intention was that John D. Potter should take under the second clause an absolute estate in fee in the real estate, and that the fourth clause is applicable only to the principal of the personal estate, the income of which had been given to him for life, and which had not been previously disposed of by the will. It will be observed that the fourth clause starts out with the appointment of the executor and directs that all of the property shall be appraised. Ordinarily an executor is concerned as such only with the personal estate. Moreover, the property which he is to hold is to be appraised. We see no reason why the testatrix should have deemed it necessary or important to have an appraisal of the real estate, while it might be highly important, if not necessary, to have such ap-

praisal of the personal estate which the executor was to hold during his life for his own benefit in order that it might be known at his decease whether the principal remained intact for the beneficiaries named in the fourth clause.

*Stephen A. Cooke & Louis L. Angell,* for complainants.

*Edwin C. Pierce & Albert A. Baker,* for different respondents.